```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

                         Plaintiffs,

        -against-                              MEMORANDUM & ORDER
                                               98-CV-2041(JS)(ARL)
INTERNATIONAL BROTHERHOOD OF
INDUSTRIAL WORKERS HEALTH AND
WELFARE FUND,

                         Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:          Suzanne Lucia Demitrio, Esq.
                        Kevin E. Crowley, Esq.
                        Mark A. Holbert, Esq.
                        Patricia M. Rodenhausen, Esq.
                        U.S. Department of Labor
                        Office of the Solicitor, Region II
                        201 Varick Street, Room 983
                        New York, NY 10014

For Defendant
International
Brotherhood of
Industrial Workers
Health and Welfare
Fund:                   Sally L. Schneider, Esq.
                        Proskauer Rose LLP
                        Eleven Times Square
                        New York, NY 10036

For Interested Party
EHPA:                   Austin R. Graff, Esq.
                        The Scher Law Firm, LLP
                        One Old Country Road
                        Suite 385
                        Carle Place, NY 11514

                        Robert S. Nayberg, Esq.
                        Law Offices of Martin H. Scher
                        One Old Country Road, Suite 385
                        Carle Place, NY 11514
```

| For Interested Party Insurance Trust Fund of the National Organization of Industrial Trade Unions: | Barry E. Warner, Esq.<br>Mark David Harris, Esq.<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, NY 10036-8299 |
|---|---|

SEYBERT, District Judge:

Currently pending before the Court are two Reports and Recommendations issued by Magistrate Judge Arlene R. Lindsay. The first was filed on November 21, 2014 ("the November R&R") and the second on February 10, 2015 (the "February R&R"). For the following reasons, the November R&R (Docket Entry 269) and the February R&R (Docket Entry 274) are ADOPTED in their entirety.

BACKGROUND

I.  Factual Background

The Court assumes familiarity with the underlying facts of this case, which are described in the Court's prior orders. Briefly, however, the Secretary of Labor ("Plaintiff") commenced this action on March 3, 1998 pursuant to provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. (March 29, 2002 Memorandum and Decision (the "March 2002 Order"), Docket Entry 253-10, at 2.) Plaintiff alleged that certain individual defendants breached their fiduciary duties to the International Brotherhood of Industrial

2

Workers Health and Welfare Fund (the "BIW Fund") by doing business with an individual named Clarke Lasky, a "known embezzler." Chao v. Merino, 452 F.3d 174, 177 (2d Cir. 2006). The BIW Fund was an ERISA employee welfare benefit plan that existed to provide healthcare and other benefits to its participants. (March 2002 Order at 3.)

Clarke Lasky ("Lasky") was the president and owner of Employee Health Plan Administrators ("EHPA"), a company that represented employers in their relations with employee benefit funds. Chao, 452 F.3d at 177. In 1984, he was convicted of embezzling $62,208 from an employee benefit plan." Lasky was sentenced to six years in prison. (March 2002 Order at 5.) In 1991, after his release from prison, the BIW Fund began doing business with Lasky and EHPA. Unfortunately, in 1994, Lasky started keeping employer contributions to the BIW Fund for himself. (March 2002 Order at 6-7.) Although he subsequently paid back a portion of the money, Lasky was again indicted for embezzlement in 1997 and was sentenced to twenty-seven months in prison and ordered to pay restitution of $365,000. (March 2002 Order at 8-9; February R&R at 2.)

After extensive litigation in this action, the Court concluded that EHPA was simply an alter ego of Lasky; that Lasky violated his fiduciary duties under ERISA by failing to remit benefit contributions to the BIW Fund; and that the administrator

3

and the trustees of the BIW Fund also violated their fiduciary duties under ERISA. (July 13, 2012 Order ("July 2012 Order"), Docket Entry 229, at 1.)

As a result of this litigation, the Fund no longer retained any trustees to manage and control its assets. Therefore, this Court took control over the distribution of the BIW Fund's limited remaining assets and retained jurisdiction for that purpose. (July 2012 Order at 2.) To insure that claims against the BIW Fund were resolved in a coherent and equitable fashion, the order also barred the initiation of any action against the Independent Fiduciary or the BIW Fund without of prior authorization of the Court. (July 2012 Order at 2.)

A. <u>Lasky's State Court Action</u>

In 1995, the BIW Fund brought an action against Lasky, his wife, and EHPA seeking to restrain them from selling the Laskys' house, which was pledged as security under an agreement to pay the BIW Fund back for the money Lasky took (the "State Court Action"). (<u>See</u> Compl., <u>Brotherhood of Industrial Workers Health and Welfare Fund</u>, Index No. 95-10078, Docket Entry 235-9.) The Laskys and EHPA filed a counterclaimed for breach of contract, asserting that the BIW Fund was contractually obligated to maintain a $410,000 reserve Fund for their benefit, but failed to do so. After the BIW Fund did not respond to discovery requests in the State Court Action, the court ruled in favor of the Laskys on their

4

counterclaim for breach of contract. (See Short Form Order, Brotherhood of Industrial Workers Health and Welfare Fund, Index No. 95-10078 ("Short Form Order"), Docket Entry 235-29, at 4.) The matter was referred for an inquest and judgment was entered against the BIW Fund in the amount of $ 741,866.75. (Judgment, Brotherhood of Industrial Workers Health and Welfare Fund, Index No. 95-10078, Docket Entry 245-2.)

In 2006, EHPA filed an action in Nassau County Supreme Court seeking to enforce its judgment against the BIW Fund. (EHPA's Ltr. Mot., Docket Entry 227, at 1.) EHPA then sought permission from this Court to continue its action in Nassau County Supreme Court. However, the EHPA was ordered to seek a stay of its 2006 Nassau County Supreme Court action and bring its claim before this Court. (July 2012 Order at 2.)

II. Procedural Background

On April 23, 2014, the Court-appointed Independent Fiduciary who administers the BIW Fund proposed a plan to dispose of the BIW Fund's remaining $89,100 in assets. (See October 21, 2011 Ltr., Docket Entry 252.) On May 5, 2014, EHPA filed a motion Opposing the Independent Fiduciary's plan and seeking an order declaring that the Insurance Trust Fund of the National Organization of Industrial Trade Unions (the "NOITU Fund") to be the legal successor of the BIW Fund. (Docket Entry 253.) EHPA therefore seeks to hold the NOITU Fund liable for the EHPA's

5

judgment in the State Court Action. On June 30, 2014, the NOITU Fund submitted a cross-motion seeking an order declaring that it is not the successor to the BIW Fund. (Docket Entry 262.) Both EHPA's motion and NOITU Fund's motion were referred to Judge Lindsay for a Report and Recommendation on whether they should be granted. (See May 27, 2014 Electronic Order.)

On November 21, 2014, Judge Lindsay issued her November R&R recommending that the pending motions be deferred so that the Independent Fiduciary could retain counsel to advise him about certain legal and tax issues raised in the motions. (November R&R at 1.) No objections were filed to the November R&R. However, the NOITU Fund asked the Court not defer deciding whether the NOITU Fund was the BIW's legal successor. (See Response to November R&R, Docket Entry 270.) Judge Lindsay granted the NOITU Funds request and issued the February R&R recommending that the Court decide that the NOITU Fund is not the legal successor of the BIW Fund. (February R&R at 16.) EHPA filed its objections to Judge Lindsay's February R&R on February 23, 2014. (Docket Entry 275.) In its objections EHPA makes the following arguments: (1) the Court did not give sufficient weight to letters filed by David Silverman, the BIW Fund's former Independent Fiduciary; (2) Silverman's statements are binding on the BIW Fund; (3) the fact that Proskauer Rose LLP represented both the BIW Fund and the NOITU Fund is evidence of successorship; (4) the fact that the NOITU Fund

6

previously sought assets from the BIW Fund is evidence of successorship; (5) Judge Lindsay did not specify what standard she used to determine successorship; and (6) more discovery is needed. (EHPA Br., Docket Entry 275, at 1-11.)  For the forgoing reasons, the Court overrules all of EHPA's objections and adopts both Judge Lindsay's February R&R and her November R&R in their entirety.

DISCUSSION

I. The February R&R

The Court will first discuss the relevant standard of review before addressing EHPA's objections to the February R&R.

A. Standard of Review

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citations omitted).  A party may serve and file specific, written objections to a magistrate's report and recommendation within fourteen days of receiving the recommended disposition.  See FED. R. CIV. P. 72(b)(2).  Upon receiving any timely objections to the magistrate's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3).  A party that objects to a report and recommendation must point out "the

7

specific portions of the report and recommendation to which they object." See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citation omitted).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). But if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (internal quotation marks and citation omitted). Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." Kennedy v. Adamo, No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal quotation marks and citation omitted).

B. The Successor Liability Standard

EHPA argues that Judge Lindsay erred by not setting forth the standard she used to decide the issue of successor liability in her February R&R. (EHPA's Br. at 11.) The Court Disagrees.

Judge Lindsay acknowledges in her February R&R that the issue of successor liability between two non-profit employee

8

benefit trusts was likely one of first impression.[1]  Judge Lindsay therefore discussed two potential standards in her February R&R that could be used to decide the successor issue: (1) the Federal common law rule governing corporate successor liability and (2) the standard articulated in Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 43, 107 S. Ct. 2225, 2236, 96 L. Ed. 2d 22 (1987), which is used to determine whether a company has an obligation to bargain with a union that represented the employees of the company's predecessor.  (February R&R at 10-11.)  Judge Lindsay determined that, under either standard, the NOITU Fund was not the successor of the BIW Fund.  (February R&R at 11.)

The Court notes that the standard governing successor liability in the corporate context, although not a perfect fit, is more appropriate for determining successor liability between two non-profit employee benefit trusts.  Under that test, "[a] corporation that acquires the assets of another corporation does not automatically assume the liabilities of the predecessor corporation."  Kessenich v. Raynor, 120 F. Supp. 2d 242, 255 (E.D.N.Y. 2000); see also New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006).  "Liability is assumed only if one of four criteria is met: (1) the successor corporation either

---

[1] The Court has been unable to locate any authority addressing the test for successor liability when the entities at issue are non-profit employee benefit funds.

9

expressly or impliedly agrees to assume the predecessor's liabilities; (2) the transaction is a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." Kessenich, 120 F. Supp. 2d at 255. The relevant question in this case is whether a de facto merger occurred between the BIW Fund and the NOITU Fund. "For a de facto merger to occur, there must be a continuity of the successor and predecessor [ ], as evidenced by: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operations . . . ." Ulanet v. D'Artagnan, Inc., 170 F. Supp. 2d 356, 358 (E.D.N.Y. 2001) (citation omitted) (elipsis in original). As Judge Lindsay discussed in her February R&R, all of the credible evidence demonstrates that such a merger did not take place. In the late 1990's, the BIW Fund was suffering financially. The NOITU Fund therefore allowed numerous BIW Fund members to transfer to its Fund so that they could continue to receive healthcare benefits. (See July 25, 2006 Ltr., Docket Entry 253-16.) There is insufficient evidence in the record to support the conclusion that the NOITU Fund became the successor of the BIW Fund. Therefore,

10

EHPA's objections concerning the standard used by Judge Lindsay to determine successor liability is OVERRULED.

C. <u>Weight Afforded to Silverman's Statements</u>

EHPA argues that Judge Lindsay did not give sufficient weight in her February R&R to certain statements made by David Silverman, the BIW Fund's former Independent Fiduciary. (EHPA's Br. at 2, 7.) EHPA's objections, however, must be rejected because (1) they duplicative of the arguments it made in its original moving papers and (2) Judge Lindsay considered and rejected EHPA's interpretation of Silverman's letters in her February R&R. (February R&R at 14-16.) "It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." <u>Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan</u>, 806 F. Supp. 380, 382 (W.D.N.Y. 1992). Thus, when a party raises arguments that were already addressed by the Magistrate Judge, the District Court need only review the Magistrate Judge's decision for clear error. <u>See</u> <u>Vega v. Artuz</u>, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)

David Silverman, who was formerly the BIW Fund's Independent Fiduciary, stated in a number of letters to the Court that the BIW Fund was "taken over" by the NOITU Fund. (<u>See, e.g.</u>,

Dec. 22, 2004 Ltr., Docket Entry 253-15.) EHPA relied heavily upon these statements, both in its original motions and in its objections. However, Judge Lindsay discussed Silverman's letters in detail in her February R&R and found that they did not raise a material question of fact concerning NOITU's status as a successor. Judge Lindsay specifically reasoned that: (1) Silverman was not involved with the transfer of members from the BIW Fund to the NOITU Fund, and (2) Silverman's informal description of the NOITU Fund "taking over" the BIW Fund was insufficient evidence to attach any legal significance to. (See February R&R at 13-14.) The Court agrees that the Board Minutes of the NOITU Fund, bolstered by the Affidavit of Candice Stark provides substantial evidence that the NOITU Fund merely picked up members of the BIW Fund whose healthcare needs could no longer be met, and did so without taking further steps to become the BIW Fund's legal successor. (See NOITU Fund March 19, 1996 Board Minutes, Docket Entry 262-3, at 13; Affidavit of Candice Stark, Docket Entry 262-2.) The Board Minutes, dated March 19, 1996 are explicit that "the NOITU Fund shall not accept any assets of the BIW Fund and [ ] the NOITU Fund is not and shall not be the "successor" to the BIW Fund. (NOITU Fund March 19, 1996 Board Minutes at 13.) Judge Lindsay did not err by giving little weight to Silverman's statements. Therefore EHPA's objections concerning the weight afforded Silverman's statements are OVERRULED.

The Court also rejects EHPA's argument that Silverman's statements are binding on the BIW Fund (EHPA Br. at 7.). EHPA made the same argument in its original moving papers and the argument was addressed and rejected in Judge Lindsay's February R&R. (See Supp. Br. to Confirm EHPA's Distribution Plan, Docket Entry 253-18, at 14-15; February R&R at 13-15.) Having reviewed Judge Lindsay's analysis for clear error, the Court OVERRULES all EHPA's objections concerning the legal effect of Silverman's statements.

D.  The NOIU Fund's Requests for Compensation from the BIW Fund

EHPA argues that Judge Lindsay failed to consider that the NOITU Fund sought compensation from the BIW Fund before ruling that the NOITU Fund was not the BIW Fund's legal successor. (EHPA Br. at 5.) Although the NOITU Fund did seek assets from the BIW Fund, it only sought compensation for money that the NOITU Fund spent to cover healthcare costs for BIW Fund members before they transferred to the NOITU Fund. Starting in March 1996, the NOITU Fund paid for medical benefits for BIW members who wanted to join the NOITU Fund. However those BIW Members did not formally switch to the NOITU Fund until June 1996. (See Sept. 3, 2004 Ltr., Docket Entry 253-14, at 2.) Thus, the NOITU Fund paid for three months of medical benefits for certain BIW members gratuitously and now only seeks reimbursement. Seeking the costs that the BIW Fund

13

should have paid on behalf of its members is not evidence that a merger took place. Therefore, EHPA's objection concerning the NOITU Fund seeking reimbursement of certain monies is OVERRULED.

   E. Joint Representation

EHPA asserts that Judge Lindsay did not consider that Proskauer Rose LLP ("Proskauer") previously represented both the BIW Fund and the NOITU Fund as evidence of successor liability. (EHPA's Br. at 8.) This argument is ridiculous and without merit. The mere fact that a law firm undertook a joint representation of two parties whose interests were aligned is not evidence that one party is the legal successor of the other. Moreover, Judge Lindsay already considered and rejected this same argument. (February R&R at 16.) Therefore EHPA'S objection regarding the significance of Proskauer's joint representation is OVERRULED.

   F. Additional Discovery

EHPA claims that more discovery is necessary to clarify an apparent contradiction between Candice Stark's affidavit and one of Silverman's letters. Specifically, EHPA points to the difference between Stark's assertion that only 1,100 members transferred from the BIW Fund to the NOITU Fund, and Silverman's statement in a September 2004 letter that he saw a list of 3,268 members who transferred from one fund to the other. (See EHPA's Br. at 10.) Judge Lindsay found in her February R&R that, although this conflicting information "may raise a question of fact as to

14

the number of transferring participants," it did not raise a question of fact regarding the legal question of successorship. (February R&R at 15-16.) The Court agrees with Judge Lindsay's conclusion. Even if 3,268 former BIW Fund members--rather than 1,100--joined the NOITU Fund, it is undisputed that (1) the NOITU did not receive assets from the BIW Fund, (2) the BIW Fund still exists as a legal entity to this day, and (3) there is significant documentary evidence showing that the NOITU Fund did not seek to merge with the BIW Fund. Thus, all of the credible evidence points to the conclusion that the NOITU Fund is not the BIW Fund's legal successor.

The Court is not persuaded that additional discovery will lead to a different conclusion. This case is over a decade old and Silverman--the person who was most knowledgeable about this apparent conflict--unfortunately passed away. There is no reason is prolong this case further. Therefore, EHPA's objection regarding additional discovery is OVERRULED.

II. The November R&R

In her November R&R, Judge Lindsay deferred ruling on the parties' motions concerning the Independent Fiduciary's proposed distribution plan for the BIW Fund's remaining assets. Judge Lindsay recommended that counsel first be appointed to advise the BIW Fund's Independent Fiduciary concerning certain legal and tax issues raised in the parties' applications related to the

15

distribution plan. (November R&R at 1.)  Judge Lindsay further recommended that "counsel fees be taken from the available monies in the BIW Fund."  (November R&R at 1.)

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  If no timely objections have been made, the "court need only satisfy itself that there is no clear error on the face of the record."  Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).

Objections to Judge Lindsay's November R&R were due within fourteen days of service of the R&R.  The time for filing objections has expired, and no party has objected.[2]  Accordingly, all objections are hereby deemed to have been waived.

Upon careful review and consideration, the Court finds Judge Lindsay's November R&R to be well-reasoned and free of clear error.  The Court therefore ADOPTS Judge Lindsay's November R&R in its entirety.  The Court will set a conference shortly to discuss appointing counsel for the Independent Fiduciary.

---

[2] As discussed above, the NOITU Fund did file a response to Judge Lindsay's November R&R, (Docket Entry 271), which led Judge Lindsay to rule on the issue of successorship in her February R&R. However, neither the NOITU Fund nor EHPA filed formal objections to the November R&R.

CONCLUSION

For the foregoing reasons Judge Lindsay's November R&R (Docket Entry 269) and her February R&R (Docket Entry 274) are both ADOPTED in their entirety and EHPA'S objections to Judge Lindsay's February R&R are OVERRULED. The Court will set a conference shortly to discuss appointing counsel for the BIW Fund's Independent Fiduciary so that he can advise the Independent Fiduciary about the proposed distribution plans and the litigants' pending applications. The Court DEFERS RULING at this time on the balance of the parties' applications. (Docket Entries 253, 262.)

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  31 , 2015
Central Islip, NY