```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

                         Plaintiff,

        -against-                              MEMORANDUM & ORDER
                                               98-CV-2041(JS)(ARL)
INTERNATIONAL BROTHERHOOD OF
INDUSTRIAL WORKERS HEALTH AND
WELFARE FUND,

                         Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:          Suzanne Lucia Demitrio, Esq.
                        Kevin E. Crowley, Esq.
                        Mark A. Holbert, Esq.
                        Patricia M. Rodenhausen, Esq.
                        U.S. Department of Labor
                        Office of the Solicitor, Region II
                        201 Varick Street, Room 983
                        New York, NY 10014

For Defendants:
International
Brotherhood of
Industrial Workers
Health and Welfare
Fund                    Peter M. Burke, Esq.
                        Lindabury McCormick Estabook & Cooper
                        53 Cardinal Dr.
                        Westfield, NJ 07090

                        Sally L. Schneider, Esq.
                        Proskauer Rose LLP
                        Eleven Times Square
                        New York, NY 10036

For Interested Party:
EHPA                    Austin R. Graff, Esq.
                        Robert S. Nayberg, Esq.
                        The Scher Law Firm, LLP
                        One Old Country Rd., Suite 385
                        Carle Place, NY 11514
```

|  |  |
|---|---|
|  | Robert S. Nayberg, Esq.<br>Law Offices of Martin H. Scher<br>One Old Country Road, Suite 385<br>Carle Place, NY 11514 |
| Insurance Trust Fund of the National Organization of Industrial Trade Unions | Barry E. Warner, Esq.<br>Mark David Harris, Esq.<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, NY 10036-8299 |

SEYBERT, District Judge:

Pending before the Court is (1) a proposed distribution plan (Docket Entry 252) submitted by Jaqueline M. Carmichael, the Court-appointed independent fiduciary (the "Independent Fiduciary"); (2) nonparty Employee Health Plans Administrators Inc.'s (EHPA) motion asking the Court to reject the proposed distribution plan and bar any party other than EHPA from receiving assets (Docket Entry 285); and (3) a motion submitted by the Independent Fiduciary's counsel, Lindabury, McCormick, Estabrook & Cooper, P.C. ("LMEC") seeking attorney fees, costs, and disbursements, (Docket Entry 289). For the reasons that follow, the Independent Fiduciary's distribution plan is APPROVED, EHPA's motion is DENIED, and LMEC's motion is GRANTED.

BACKGROUND

I. Factual Background

The Court assumes familiarity with the underlying facts of this case, which are described in the Court's prior Orders. Briefly, the International Brotherhood of Industrial Workers Health and Welfare Fund (the "BIW Fund") was an ERISA employee welfare benefit plan that existed to provide healthcare and other benefits to its participants. (March 29, 2002 Memorandum and Order (the "Mar. 2002 Order"), Docket Entry 253-10, at 3.) Clarke Lasky ("Lasky") was the president and owner of Employee Health Plan Administrators ("EHPA"), a company that represented employers in their relations with employee benefit funds. Chao v. Merino, 452 F.3d 174, 177 (2d Cir. 2006). In 1984, Lasky was convicted of embezzling $62,208 from an employee benefit plan that is unrelated to this litigation. He was subsequently sentenced to six years in prison. (Mar. 2002 Order at 5.) In 1991, after Lasky was released from prison, the BIW Fund began doing business with Lasky and EHPA. In 1994, Lasky started secretly keeping employer contributions to the BIW Fund for himself. (Mar. 2002 Order at 6-7.) Although he subsequently paid back a portion of the money he took, Lasky was again indicted for embezzlement in 1997, sentenced to twenty-seven months in prison, and ordered to pay $365,000 in restitution. (Mar. 2002 Order at 8-9; Feb. 2015 R&R, Docket Entry 274, at 2.)

The Secretary of Labor (the "Secretary") commenced this action on March 13, 1998 against Joseph Marino ("Marino"), Sandra Briand ("Briand"), Hellen Williams ("Williams"), Donald Gancio ("Gancio"), and Lasky (collectively "Defendants") pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. The Secretary principally alleged that Defendants Marino, Briand, Williams, and Gancio breached their fiduciary duties to the BIW Fund by doing business with Lasky, a "known embezzler," Chao, 452 F.3d at 177, and that Lasky was liable for stealing benefit contributions. (Mar. 2002 Order at 10.)

After extensive litigation in this action, the Court concluded that EHPA was simply an alter ego of Lasky; that Lasky violated his fiduciary duties under ERISA by keeping benefit contributions for himself; and that the other Defendants also violated their fiduciary duties to the BIW Fund. (July 12, 2007 Order ("July 2007 Order"), Docket Entry 229, at 1.) Restitution judgments were subsequently docketed against Defendants, and several Defendants--but not Lasky--restored a total of $100,000 to the fund. (See Sec'y.'s Br., Docket Entry 259, at 2.) Lasky has not paid any money, in either his criminal or civil case, to compensate the victims of his misdeeds. (Sec'y.'s Br. at 4.) In fact, all of the remaining monies in the BIW Fund is traceable to payments made by Defendants other than Lasky. (Sec'y.'s Br. at 4.)

As a result of this litigation, the Fund no longer retained any trustees to manage and control its assets. This Court therefore took control of the distribution of the BIW Fund's limited remaining assets and retained jurisdiction for that purpose. (July 2007 Order at 2.) The Court also appointed an Independent Fiduciary responsible for "marshal[ing] and distribut[ing] [BIW] Fund assets for the benefit of the Fund's participants." (Judgment, Docket Entry 182.) In addition, to ensure that claims against the BIW Fund were resolved in a coherent and equitable fashion, the Court also barred the initiation of any action against the Independent Fiduciary or the BIW Fund without prior authorization of the Court. (July 2007 Order at 2.)

A. Lasky's State Court Action

In 1995, the BIW Fund brought an action against Lasky, his wife, and EHPA seeking to restrain them from selling Lasky's house, which was pledged as security under an agreement to pay the BIW Fund back for the money Lasky stole (the "State Court Action"). (See Compl., Bhd. of Indus. Workers Health & Welfare Fund, Index No. 95-10078, Docket Entry 235-9.) Lasky and EHPA filed a counterclaim for breach of contract, asserting that the BIW Fund was contractually obligated to maintain a $410,000 reserve Fund for their benefit, but failed to do so. After the BIW Fund did not respond to discovery requests in the State Court Action, the court ruled in favor of Lasky and the EHPA on their counterclaim

5

for breach of contract. (See Short Form Order, Bhd. of Indus. Workers Health & Welfare Fund, Index No. 95-10078 ("Short Form Order"), Docket Entry 235-28, at 4.) The matter was referred for an inquest and judgment was entered against the BIW Fund in the amount of $ 741,866.75. (Judgment, Brotherhood of Industrial Workers Health and Welfare Fund, Index No. 95-10078, Docket Entry 245-2.)

In 2006, EHPA filed an action in Nassau County Supreme Court seeking to enforce its judgment against the BIW Fund. (EHPA's 2006 Ltr. Mot., Docket Entry 227, at 1.) EHPA then sought permission from this Court to continue its action in Nassau County Supreme Court. However, the EHPA was ordered to seek a stay of its 2006 Nassau County Supreme Court action and bring its claim before this Court. (July 2007 Order at 2.)

B. The NOITU Fund

Following the demise of the BIW Fund, the Insurance Trust Fund of the National Organization of Industrial Trade Unions (the "NOITU Fund") allowed some of the BIW Fund's participants to become participants in the NOITU Fund. Chao v. Int'l Bhd. of Indus. Workers Health & Welfare Fund, 97 F. Supp. 3d 268, 279 (E.D.N.Y. 2015). In addition, the NOITU Fund agreed to pay three months of medical claims on behalf of employees who agreed to join the NOITU Fund. Id. Although it is disputed how many members transferred from the BIW Fund to the NOITU Fund, the Independent Fiduciary

estimated that 1172 out of 3629 BIW Fund participants transferred to the NOITU Fund.  Id. at 286.  EHPA previously argued that the NOITU Fund was the legal successor to the BIW Fund, and therefore EHPA could look to the NOITU Fund to satisfy its judgment.  However, the Court rejected EHPA's argument.  Id. at 276.  According to the Independent Fiduciary, the NOITU Fund paid in excess of $565,000 in medical claims incurred by BIW Fund members before they joined the NOITU Fund.  (Oct. 21, 2011 Ltr. at 1.)  The NOITU fund therefore has a claim against the remaining assets in the BIW Fund.

    C.   The Independent Fiduciary's Plan

On April 23, 2014, the Court-appointed Independent Fiduciary, who administers the BIW Fund, proposed a plan to dispose of the BIW Fund's remaining $89,100 in assets.  (See Oct. 21, 2011 Ltr. (the "Plan", Docket Entry 252.)  The Plan contemplates allocating 85% of the remaining monies in the BIW Fund to former BIW Fund members to compensate them for damages suffered as a result of the Fund's demise.  In addition, 10% of the Fund's assets would be allocated to the NOITU Fund based upon their outstanding claim and 5% of the monies would be allocated to EHPA to go towards satisfying its state court judgment.  (See Plan at 3.)  However, the Independent Fiduciary also proposed that EHPA agree to "offset its allocation of monies in the BIW Fund against monies owed by

7

Lasky under the criminal restitution order," which remains unpaid. (Plan at 3.)

On May 5, 2014, EHPA filed a motion opposing the Independent Fiduciary's plan on several grounds and offered a competing distribution plan that allocates a greater portion of the BIW Fund's remaining assets to EHPA. (Docket Entry 253.) Principally EHPA argued that: (1) EHPA had a "superior claim" to BIW's remaining assets, (2) the Court should permit EHPA to recover its judgment under the New York Debtor Creditor Law, and (3) the NOITU Fund is liable for EHPA's judgment as the BIW Fund's legal successor. (See EHPA's May 2014 Br., Docket Entry 253-18.) The Court rejected EHPA's successor liability argument, but deferred ruling on the balance of EHPA's motion to allow the Independent Fiduciary to retain counsel. See Chao, 97 F. Supp. 3d at 276-77. Following a hearing, the Independent Fiduciary was granted permission to retain an attorney to respond to EHPA's remaining arguments. (See May 6, 2015 Minute Entry, Docket Entry 282.) Subsequently, EHPA filed an additional motion seeking to bar the distribution of assets to any person other than EHPA pursuant to the New York Debtor Creditor Law. (See EHPA's Br., Docket Entry 285-8.) The Independent Fiduciary, through her new counsel, LMEC, filed an opposition brief. (Fiduc.'s Br., Docket Entry 287.) In addition, LMEC also filed a motion seeking attorney fees and costs on behalf of itself and the Independent Fiduciary for their work

on this case. (Docket Entry 289.) Both EHPA's motion opposing the Independent Fiduciary's Plan (Docket Entry 285) and LMEC's motion for attorney fees (Docket Entry 289) are pending before the Court.

DISCUSSION

I. Distributing the BIW Fund's Remaining Assets

District Courts are empowered to appoint a fiduciary to wind-down and terminate a defunct or abandoned employee benefit fund. Marshall v. Snyder, 572 F.2d 894 (2d Cir. 1978) (finding that the district court had equitable power under ERISA to order appointment of receiver); Solis v. Bosniak, No. 12-CV-1621, 2013 WL 4039376, at *5 (E.D.N.Y. Aug. 6, 2013) (appointing an independent fiduciary to administer the Plan and implement its orderly termination if appropriate); Solis v. J.P. Maguire Co. Salary Savings Plan, No. 11-CV-2904, 2012 WL 4060567, at *1 (E.D.N.Y. Sept. 14, 2012) (same); see also 29 U.S.C. § 1132(a)(5). The Independent Fiduciary has submitted a plan to distribute BIW Fund's remaining assets and terminate the Fund. This Court sitting in equity may approve the proposed distribution plan provided it is fair and reasonable.[1]

---

[1] District courts apply the "fair and reasonable" standard when approving distribution plans in the securities fraud context. See, e.g., S.E.C. v. Byers, 637 F. Supp. 2d 166, 168 (S.D.N.Y. 2009) aff'd sub nom. S.E.C. v. Malek, 397 F. App'x 711 (2d Cir.

9

A. Reliance upon BIW Fund Documents

Under 29 U.S.C. § 1103, "the assets of a welfare plan which terminates shall be distributed in accordance with the terms of the plan." Both the Independent Fiduciary and EHPA point to the language of the BIW Fund's Trust Agreement in support of their respective positions regarding how the Fund's remaining assets should be distributed. (See Fiduc. Br., Docket Entry 287, at 6; EHPA Br. at 3.) The section of the Trust Agreement discussing termination of the agreement, states as follows:

> Section 2. Procedure on Termination. In the event of a termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus in such manner as will in their opinion best effectuate the purpose of the fund: **provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefit of the Employees, their families, beneficiaries, or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.** Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any contributing Employer or Union.

(Burk. Aff., Docket Entry 287-1, Ex. A at 43 (emphasis added).) Here, the Independent Fiduciary's Plan contemplates paying the

---

2010) and aff'd sub nom. S.E.C. v. Orgel, 407 F. App'x 504 (2d Cir. 2010).

10

largest portion of the remaining monies to former beneficiaries of the Fund. Although the Trust Agreement contemplates first paying all of the Fund's obligations upon termination of the Fund, that clause is modified by the statement that "no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefit of the Employees, their families, beneficiaries, or dependents . . . ." The Court finds that this modifying language supports the Independent Fiduciary's decision to allocate the largest portion of the Funds remaining assets to former beneficiaries, who were harmed by Defendants' actions in this case. Moreover, the fact that the Independent Fiduciary did not cite to Trust Agreement is not fatal to the Plan. The Court therefore finds that the Independent Fiduciary's Plan does not run contrary to the language in the Trust Agreement.

B. New York Debtor-Creditor Law

EHPA argues that the Independent Fiduciary's proposal to distribute monies to the former beneficiaries of the BIW Fund violates various provisions of the New York Debtor and Creditor Law. (EHPA's Br. at 3-6.) EHPA specifically points to New York Debtor and Creditor Law §§ 273-a, 276, and 278, which prohibit fraudulent conveyances intended to hinder the payment of a valid obligation. (EHPA's Br. at 3-6.) However, the Independent Fiduciary's Plan does not violate any of these provisions. As an

initial matter, § 276[2] and § 278[3] prevent conveyances that are made with the intent to defraud creditors, and no such intent exists. Atlanta Shipping Corp. v. Chem. Bank, 631 F. Supp. 335, 346 (S.D.N.Y. 1986) aff'd, 818 F.2d 240 (2d Cir. 1987) ("Absent a presumed intent, a plaintiff cannot state a claim under any of the above-noted sections . . . ."). To the contrary, the Independent Fiduciary's Plan to dispose of the remaining assets is merely one person's determination of how to fairly apportion assets from an

---

[2] The full text of § 276 reads:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. DEBT. & CRED. LAW § 276.

[3] The full text of § 278 reads:

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.
> 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment

N.Y. DEBT. & CRED. LAW § 278.

insufficient pool among multiple stakeholders. As the Second Circuit explained, "[w]hen funds are limited, hard choices must be made." Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C., 467 F.3d 73, 84 (2d Cir. 2006) (internal quotation marks and citation omitted, alteration in original).

Though § 273-a does not explicitly require fraudulent intent, it prohibits conveyances "made without fair consideration"[4] by a defendant after a judgment has been docketed against him. N.Y. DEBT. & CRED. LAW § 273-a. "The purpose of § 273-a is to provide a remedy for a creditor who has brought an action for money damages against a party who, after being named a defendant in that action, conveys assets to a third party for less than fair consideration leaving the ultimate judgment unpaid." Sklaroff v. Rosenberg, 125 F. Supp. 2d 67, 74 (S.D.N.Y. 2000) aff'd, 18 F. App'x 28 (2d Cir.

---

[4] For purposes of the Debtor and Creditor law, "fair consideration" is defined as follows:

> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. DEBT. & CRED. LAW § 272.

13

2001). Here, the only assets the BIW Fund holds are traceable to the Secretary's recovery from Defendants in this action for breach of fiduciary duty. (Sec'y.'s Br. at 4.) Thus, the Independent Fiduciary's proposed disbursement of monies to former beneficiaries of the BIW Fund is not being made "without fair consideration" because payments are akin to restitution for the underlying wrongs that occurred in this case. Thus, the Independent Fiduciary's plan does not violate the New York Debtor and Creditor Law.

C. EHPA's Argument that it has a "Superior Claim" to the Remaining Assets

EHPA argues that, as a judgment creditor, it has a superior claim to the remaining assets of the BIW Fund because the statute of limitations for ERISA claims against the Fund has expired. (EHPA Br., at 1.) This argument must also be rejected.

EHPA relies upon 29 U.S.C. § 1132(a)(1), which authorizes an plan participant or beneficiary to bring a civil cause of action against a plan "to recover benefits due to him under the terms of his plan." However, the statute of limitations for an enforcement action is inapplicable to the present situation. No plan participants or beneficiaries have filed civil actions against the BIW Fund and the Secretary's action for breach of fiduciary duty was decided years ago. In this action, the only issue that remains undecided is how to allocate the minimal remains

14

of a now defunct ERISA plan, which was looted by those charged with monitoring it. Thus, EHPA's statute of limitations argument is irrelevant.

    D.    <u>Distributing Money to EHPA Would be Improper in Light of Lasky's Unpaid Judgment in this Case</u>

In response to EHPA's motion seeking a greater share of the BIW Fund's assets, the Secretary argues that no money should be disbursed to EHPA because EHPA is the alter-ego of Lasky and the Secretary holds an unsatisfied judgment against Lasky in this case. (Sec'y.'s Br. at 7.) The Independent Fiduciary also recognized in her Plan that Lasky owes money to the Government pursuant to a criminal restitution order. (<u>See</u> Plan at 2.)

The Court already determined in its summary judgment order in this case that EHPA was Lasky's alter-ego. Specifically, the Court ruled that because Lasky was the "sole shareholder," served as EHPA's president and "personally controlled the company" there was "no doubt that Lasky and EHPA were a single entity." (Mar. 2002 Order at 20.) The determination that EHPA is Lasky's alter-ego is thus the law of the case. <u>See</u> <u>Zdanok v. Glidden Co., Durkee Famous Foods Div.</u>, 327 F.2d 944, 953 (2d Cir. 1964) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). In light of the Court's determination regarding EHPA's status as Lasky's alter-ego and the fact that Lasky has not

15

paid any money to satisfy a judgment he incurred for looting the BIW Fund, the Court finds that it would not be fair and reasonable to pay EHPA even 5% of the BIW Fund remaining monies. Should EHPA recover money from the BIW Fund, the Secretary would simply seek to pull that money back into the BIW Fund based upon the judgment obtained against Lasky in this case. (See Sec'y.'s Br. at 7.) Even the Independent Fiduciary recognized the inequity of awarding EHPA 5% of the BIW Fund's remaining monies when she contemplated that EHPA might accept an offset of the money Lasky still owes pursuant to the criminal restitution order. The Court therefore rejects that portion of the Independent Fiduciary's Plan awarding EHPA monies from the remaining BIW Fund assets.

E. Approval of the Independent Fiduciary's Plan

For all of the foregoing reasons, the Court HEREBY APPROVES the Independent Fiduciary's Plan, subject to the modification that EHPA, as Lasky's alter-ego, shall not receive any portion of the BIW Fund's remaining monies.

## II. Attorneys' Fees

LMEC seeks the disbursement of attorney fees on behalf of itself and fees on behalf of the Independent Fiduciary from the BIW Fund's remaining monies. Specifically, LMEC seeks $55,645.33 in attorneys' fees and the Independent Fiduciary seeks $11,927.94 in fees for her services. (See Burke Aff., Docket Entry 289-2, ¶ 2; Carmichael Aff., Docket Entry 289-1, ¶ 12.) As discussed

below, the request for fees is granted, however, LMEC's bill is excessive and must be reduced.

Although only $89,100 in assets remains in the BIW Fund's coffers, LMEC seeks $55,645 in attorney fees for work composing one substantive brief spanning seventeen pages and a fee application. (See LMEC Br., Docket Entry 289-3.) To write one brief and a fee application, LMEC employed three partners who managed to bill a total of 164.3 hours on this matter. (See Burke Aff., Ex. A, Docket Entry 289-2, at 5-19.) Although the Court does not take issue with the hourly rates charged by the LMEC attorneys, the time and resources LMEC spent composing a single substantive opposition brief was excessive under the circumstances.

Attorney fee awards are computed using the lodestar method, which multiplies hours reasonably spent by counsel times a reasonable hourly rate. Gen. Elec. Co. v. Compagnie Euralair, S.A., No. 96-CV-0884, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997). "In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997). The party seeking the attorneys' fees bears the burden of establishing that the hours expended were reasonable. Kawan Food Mfg. SDN BHD v. Bengal Sea Foods USA Canada, Inc., No. 06-

CV-5430, 2008 WL 5483106, at *4 (E.D.N.Y. Dec. 1, 2008). Rather than sift through the submitted time sheets, the Court can "exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours." Luciano at 117; see also General Electric Co., 1997 WL 397627 at *4-*6 (reducing the fee request by 50% for, among other factors, excessive and duplicative hours); Gillberg v. Shea, No. 95-CV-4247, 1996 WL 406682, at *5 (S.D.N.Y. May 31, 1996) (reducing the fee request by one-third because excessive staffing and office conferences have been the basis for courts to reduce free requests by one-quarter to one-third) (internal quotation marks and citation omitted). Here, the Independent Fiduciary was granted permission to retain counsel for the limited purpose of composing a single opposition brief to respond to three arguments in EHPA's seven-page brief. While the Court is mindful of the complexity of this case, as a practical matter, it should not have taken 164 hours--or approximately one month worth of billable time--to accomplish this limited task. Further, the decision to allow three partners to work on this matter was inappropriate given both LMEC's limited role and minimal remaining assets of the BIW Fund. The Court therefore finds that a 50% across-the-board reduction in LMEC's fees is appropriate. LMEC's bill shall be reduced from $55,645.33 to $27,822.67. Further, the Court finds that the Independent Fiduciary's proposed $11,927.94 fee to be reasonable

in the light of her work on this matter.

## CONCLUSION

For the foregoing reasons, the Court HEREBY APPROVES the Independent Fiduciary's Plan, (Docket Entry 252), subject to the modifications discussed in this Memorandum & Order. In addition, EHPA's motion (Docket Entry 285) is DENIED and LMEC's motion (Docket Entry 289) is GRANTED, subject to the Court's reduction in the attorney fees requested by LMEC. The Independent Fiduciary is directed to begin executing her Plan, subject to the modifications addressed in this Memorandum & Order, <u>no earlier</u> than April 20, 2016 and <u>no later</u> than May 11, 2016. The Independent Fiduciary is directed to file a final status report concerning the execution of her Plan within six (6) months of the date of this Memorandum & Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March   31  , 2016
         Central Islip, New York